# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

DANIELLE R..[1],

Plaintiff,

v.

5:19-CV-538 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
CHRISTOPHER LEWIS POTTER, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.   PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on February 18, 2016, alleging disability beginning January 1, 2013. (Administrative Transcript ("T") at 15, 175-85).  Her applications were denied initially on May 17, 2016. (T. 75-100).  Administrative Law

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

Judge ("ALJ") Robyn L. Hoffman conducted a hearing on April 9, 2018, at which

plaintiff and Vocational Expert ("VE" ) David A. Festa testified. (T. 43-74).

In a decision dated May 10, 2018, the ALJ found that plaintiff was not disabled.

(T. 12-42).  The ALJ's decision became the Commissioner's final decision when the

Appeals Council denied plaintiff's request for review on March 7, 2019. (T. 1-6).

## II.   **GENERALLY APPLICABLE LAW**

### A.    **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In

addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be hired
> if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which

significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  <u>FACTS</u>

As of the date of the April 9, 2018 administrative hearing, plaintiff was 32 years old. (T. 50).  She resided with her fourteen-year-old son and twelve-year-old daughter, sharing a two story home with a roommate. (T. 51-52, 63, 551).  Plaintiff completed the tenth grade in regular education classes, before leaving school. (T. 52).

Plaintiff had worked at a fast food restaurant for almost fifteen years. (T. 53, 226, 231).  During that period, plaintiff had worked as a cashier, food preparer, and drive-through window attendant, and served as a trainer for new employees. (T. 53, 226).

Beginning in 2013, plaintiff was limited by her physical impairments to working three-and-one-half-hour shifts for three days per week, and her only job responsibility was bagging food orders for customers. (T. 54, 226, 428). Although she had to stand for the duration of her shift, plaintiff often leaned against the counter for support. (T. 54). She was still working at the time of the hearing.[2] (T. 53-55).

Plaintiff was diagnosed with tendinitis in both hands in 2012, and reported pain that radiated up her arms when lifting heavy objects or when engaging in repetitive hand actions. (T. 431, 569, 1379). She also received treatment for widespread lower back, knee, and muscle pain that increased with prolonged sitting and standing. (T. 369, 550, 1091). Plaintiff also experienced digestive difficulties and abdominal pain that had been diagnosed as gastroparesis[3] stemming from scar tissue in and around her abdomen. (T. 1385).

The ALJ's decision sets forth the medical and other evidence of record. (T. 18-34). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   THE ALJ'S DECISION

After finding that plaintiff met the insured status requirements through December 31, 2020, the ALJ found that plaintiff had not engaged in substantial gainful activity

---

[2] The ALJ concluded that this part-time employment did not rise to the level of substantial gainful activity during the relevant period, but considered this work activity as part of the RFC determination. (T. 18).

[3] Gastroparesis is a disease that prevents the stomach from emptying itself of food in a normal fashion, and is often the result of nerve damage.  https://my.clevelandclinic.org/health/diseases/15522-gastroparesis

since her alleged onset date of February 1, 2012. (T. 18).  Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: gastroparesis; mild scoliosis with chronic low back pain; bilateral tendonitis of both hands; and mild bilateral carpal tunnel syndrome. (T. 18- 21).  At the third step, the ALJ determined that plaintiff's impairments or combination thereof did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 21-22).

The ALJ found at step four of the analysis that plaintiff could physically perform the full range of light work. (T. 22-34).  In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Rulings ("SSR") 16-3p. (T. 22-23).  Finally, the ALJ stated that she considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927. (T. 23).

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 23).  The ALJ then determined that plaintiff had no past relevant work, because her earnings record and evidence of part-time employment did not meet the threshold levels for substantial gainful activity during the relevant time period. (T. 34).  However,

"considering the [plaintiff']'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (T. 34-35).  Accordingly, the ALJ determined that plaintiff was not disabled from the alleged onset date of February 1, 2012, through the date of the ALJ's decision. (T. 35).

## V.   ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.    Plaintiff's case should be remanded because it was adjudicated by an unconstitutionally appointed ALJ. (Pl.'s Br. at 22-25) (Dkt. No. 9).

2.    The ALJ improperly weighed the evidence, particularly that related to plaintiff's upper extremity limitations.  (Pl.'s Br. at 15-19).

3.    The ALJ failed to adequately assess plaintiff's subjective complaints. (Pl.'s Br. at 19-22).

Defendant argues that Plaintiff failed to timely raise her Appointments Clause argument, and that the Commissioner's determination should be affirmed because it was supported by substantial evidence. (Def.'s Br. at 3-18) (Dkt. No. 11).  For the following reasons, this court agrees with defendant and will dismiss the complaint.

## DISCUSSION

## VI.   APPOINTMENT OF ALJ

### A.    Legal Standards

Under the Appointments Clause, Congress may vest appointment of "inferior Officers . . . in the President alone, in the Courts of Law, or in the Heads of Departments.") U.S. Const. Art. II, § 2, cl. 2.  In *Lucia v. Securities & Exch. Comm'n*,

the Supreme Court held that ALJs for the Securities and Exchange Commission ("SEC") are "'[o]fficers of the United States,' subject to the Appointments Clause," and that the ALJ at issue had been improperly appointed by staff members, instead of the head of the department. *Lucia*, ___ U.S. ___, 138 S. Ct. 2044, 2051 (2018). Upon a judicial determination that an ALJ who presided over an administrative hearing had not been appointed in compliance with the Appointments Clause, the appropriate remedy was a new hearing by a different, constitutionally-appointed ALJ. *Id.* at 2055. District Courts have since applied *Lucia* to Social Security Administration ("SSA") ALJs. *See, e.g., Williams v. Berryhill*, No. 17-CV-1660, 2019 Wl 1271647, at *6 (E.D.N.Y. Mar. 19, 2019); *Bonilla-Bukhari v. Berryhill*, 357 F. Supp. 3d 341, 349-50 (S.D.N.Y. 2019).

In *Lucia*, the Supreme Court specifically stated that one is only entitled to relief if the challenge to the constitutional validity of the appointment of the adjudicating officer is timely, but Lucia had raised that issue before the SEC. *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182-83 (1995) (emphasis added)). The Second Circuit has not yet addressed whether the failure to raise an Appointments Clause challenge to ALJs during the SSA administrative process precludes pursuing that argument in subsequent judicial proceedings, although it recently ruled on that issue with respect to SEC ALJs. *See, Gonnella v. United States Sec. & Exch. Comm'n*, 954 F.3d 536, 543-46 (2d Cir. Apr. 2, 2020) ("a litigant who does not object to the constitutionality of an ALJ at any point during . . . SEC proceedings forfeits that

8

challenge").

###    B.    Application

Plaintiff contends that the ALJ did not exercise lawful authority denying her

claim, because the ALJ was an inferior officer who was not properly appointed pursuant

to the Appointments Clause of the United States Constitution.[4]  (Pl.'s Br. at 25-26.)

Accordingly, plaintiff argues that this case must be remanded to a different ALJ who

has been constitutionally appointed. (Pl.'s Br. at 26-27.)  Defendant counters that

plaintiff forfeited her Appointments Clause claim because she failed to assert this

challenge during the administrative proceedings.[5]  (Def. Br. at 10-15).

Recently, the Third Circuit Court of Appeals adopted a view favorable to

plaintiff.  *See Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 152 (3d Cir. Jan. 23, 2020).[6]

In *Cirko*, as in this case, the plaintiffs first raised an Appointments Clause challenge

before the district court.  *Id*.  In excusing the plaintiff's failure to challenge the ALJ's

---

[4] Plaintiff's brief does not address the details of ALJ Hoffmann's appointment, but cites the Commissioner's July 16, 2018 corrective approval of all SSA ALJ appointments as proof that her original appointment was invalid. (Pl.'s Br. at 25).

[5] For purposes of this proceeding, Defendant does not dispute that SSA ALJs are inferior officers, but notes that SSA's Acting Commissioner ratified the appointment of SSA ALJs and Appeals Council Administrative Appeals Judges ("AAJ") and approved their appointments as her own on July 16, 2018, in order to address any Appointments Clause questions involving SSA proceedings raised by the *Lucia* decision.  84 Fed. Reg. 9582-02 (Mar. 15, 2019).

[6] Plaintiff's brief, which was filed prior to the *Cirko* decision, relies in part upon *Bizarre v. Berryhill*, 364 F. Supp. 3d 418 (M.D. Pa. 2019).  *Bizarre* was part of the consolidated appeal that the Third Circuit decided in *Cirko*.  *Cirko*, 948 F.3d at 152.  Appeals addressing the application of *Lucia* to SSA ALJs are also pending in the Fourth, Eighth, and Eleventh Circuits, but had not been decided, as of the time of submission of this decision.

appointment during the administrative process, the Third Circuit determined that there was no statutory or regulatory issue exhaustion requirement that governs SSA proceedings.  *Id*. at 153.  Assessing three factors–the nature of the claim, the characteristics of the SSA review, and the interests involved–the Third Circuit held that timely exhaustion of an Appointments Clause challenge was not required in the SSA context.  *Id*. at 153.

*Cirko* and other cases endorsing an exception to any issue exhaustion requirement in SSA proceedings first look to two cases that preceded *Lucia*.  In *Freytag v. Comm'r of Internal Revenue,* 501 U.S. 868, 879-80 (1991), the Supreme Court held that Appointments Clause challenges were deemed to be "in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below."  *Id*. The plaintiff in *Freytag* was challenging the appointment of a Special Trial Court Judge in the Tax Court.  *Id*.  The Court reasoned that it was "'faced with a constitutional challenge that is neither frivolous nor disingenuous,'" because "[t]he alleged defect in the appointment of the Special Trial Judge goes to the validity of the Tax Court proceeding that is the basis for this litigation."  *Id*. at 879.  The Court concluded that despite "disruption to sound appellate process entailed by entertaining objections not raised below . . . this is one of those rare cases in which we should exercise our discretion to hear petitioners' challenge to the constitutional authority of the Special Trial Judge."  *Id*.

10

*Cirko* also considered *Ryder v. United States*, 515 U.S. 177 (1995), decided five years after *Freytag*.  In *Ryder*, the Court found that the challenge to the constitutional appointment of civilian judges to the Court of Military Review must be "timely." *Ryder*, 515 U.S. at 182-83.  The *Lucia* court also applied a timeliness requirement in the context of Securities and Exchange Commission proceedings.  *Lucia*, 138 S.Ct. at 2055.

Recognizing that these precedents all involved different agencies and different procedural backgrounds, the Third Circuit found that exhaustion was generally inappropriate "where a claim serves to vindicate constitutional claims like Appointments Clause challenges, which implicate both individual constitutional rights and the structural imperative of separation of powers."  *Cirko*, 948 F. 3d at 154.[7]  It noted the Supreme Court's holding in *Sims v. Apfel*, 530 U.S. 103, 107 (2000), that exhaustion of issues before the SSA Appeals Council was not required to obtain judicial relief, and observed that the "rationales driving *Sims* generally apply to ALJs no less than AAJs . . . ."  *Id*. at 156.  Echoing the plurality opinion in *Sims*, the *Cirko* decision emphasized that ALJ hearings are "inquisitorial and driven by the agency rather that the claimant," and that the governing regulations did not have an express exhaustion requirement.  *Id*. at 155-56.  Finally, the Third Circuit found that the individual interests

_____

[7] The Second Circuit would appear to have a different view on this general issue than the Third Circuit panel in *Cirko*.  *See Gonnella*, 954 F.3d at 543 ("'[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while [the agency] has opportunity for correction in order to raise issues reviewable by the courts.'" . . . Constitutional claims are no different.") (citations omitted).

of an SSA claimant outweigh the governmental interest in issue exhaustion. *Id*. at 156-57. Unlike an adversarial proceeding, the Commissioner has the primary responsibility for identifying and developing the issues, and the claimant is not required to develop facts or make arguments. *Id*. An exhaustion requirement would therefore impose an "unprecedented burden" on SSA claimants. *Id*. at 156. In contrast, the *Cirko* decision described the SSA Commissioner's interest in requiring exhaustion as low, because constitutional questions are outside the agency's expertise and the agency was incapable of providing effective relief to an applicant who raised concerns about the Appointments Clause. *Id*. at 158.

This court has carefully reviewed the Third Circuit's ruling in *Cirko*, as well as those cases within the Second Circuit that have found its reasoning "persuasive." *See Jenny R. v. Comm'r of Soc. Sec.*, No. 5:18-CV-1451 (DEP), 2020 WL 1282482, at *5 (N.D.N.Y. Mar. 11, 2020); *Suarez v. Saul*, No. 3:19-CV-173 (JAM), 2020 WL 913809, at *3 (D. Conn. Feb. 26, 2020). Ultimately, this court finds that plaintiff was still required to raise the Appointments Clause issue at the agency level prior to raising it in federal court, particularly in light of the long-standing requirement, reaffirmed in *Lucia*, that challenges to the constitutional appointment of a judge must be timely. This ruling is consistent with the "vast majority" of district courts that have considered the

Appointments Clause as it relates to SSA ALJs.[8]  *See Bonilla-Bukhari v. Berryhill*, 357

F. Supp. 3d at 351 (summarizing cases in this Circuit following *Lucia* prior to *Cirko*);

*Herring v. Saul*, No. C18-120, 2020 WL 1528163, at *10 (N.D. Iowa, March 31, 2020)

(listing cases outside the Third Circuit that declined to follow *Cirko*).

In *Lucia*, the Court specifically stated that one is only entitled to relief if the

challenge to the constitutional validity of the appointment of the adjudicating officer is

timely.  *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder v. United States*, 515 U.S. at 182-83)).

The Supreme Court did not define the limits of timeliness in *Lucia*, but found that the

challenge to the appointment of an ALJ for the Securities and Exchange Commission

was timely because it had first been raised to the Commission during the administrative

appeal.  *Id.*  The Second Circuit recently construed *Lucia's* timeliness requirement to

hold that a litigant before the SEC must raise an Appointments Clause objection to an

ALJ during the administrative proceedings or forfeit the right to pursue that issue at the

district court level.  *Gonnella*, 954 F.3d at 544.  A similar standard should be, and

typically has been, applied in the context of Social Security proceedings.  *See*

*Demoranville v. Saul*, No. 3:18-CV-1930, 2019 WL 6712056, at *1 (D. Conn. Dec. 10,

2019) ("Social Security claimants are entitled to a *Lucia* rehearing, only if they raised

---

[8] This finding is also consistent with my previous decision, *Kevin F. v. Comm'r of Soc. Sec.*, No. 5:18-CV-1454 (ATB), 2020 WL 247323 (N.D.N.Y. Jan. 16, 2020).  Although it preceded *Cirko*, my decision considered *Bizarre* and the minority of district court cases that had excused a plaintiff's failure to exhaust with regard to the Appointments Clause in SSA proceedings.  *Kevin F.,* 2020 WL 247323, at *5-6.

13

their Appointments Clause arguments during their agency hearing or appeal.") (quoting *Johnson v. Berryhill*, No. 3:17-CV-165, 2019 WL 1430242, at *14 (D. Conn. Mar. 29, 2019) (citing cases)).

Although the SSA statutes and regulations do not include an express exhaustion requirement, the regulations do impose certain requirements on claimants appearing at the administrative level, including the requirement that any objections to the ALJ who will conduct the hearing "must" be raised "at your earliest opportunity." 20 C.F.R. 404.940. Plaintiff was represented by counsel before the ALJ and before the Appeals Council, and had an opportunity to raise any concerns with respect to the Appointments Clause at the administrative level. (T. 45). The administrative hearing was conducted on April 9, 2018; the ALJ's decision was issued on May 10, 2018; on June 1, 2018, plaintiff's attorney was granted a 25-day extension to submit further information to the Appeals Council (T. 7-8); and the decision of the Appeals Council was not issued until March 7, 2019. *Freytag* was decided in 1991 and *Ryder* was decided in 1995–both well before the administrative hearing in this case–and *Lucia* was argued on April 23, 2018 and decided on June 21, 2018–while plaintiff's counsel still had time to supplement his submission to the Appeals Council.[9] *Kevin F. v. Comm'r of Soc. Sec.*, No.

---

[9] The letter from the Appeals Council said that, after June 26, 2018, it would not allow more time to send information "except for very good reason." (T. 7). Presumably, a recent and relevant ruling of the Supreme Court would have constituted "very good reason" for plaintiff's attorney to raise the Appointments Clause issue before the Appeals Council made its ruling in 2019, even if counsel did not immediately learn of the issuance of the *Lucia* decision.

14

5:18-CV-1454 (ATB), 2020 WL 247323, at *7 (N.D.N.Y. Jan. 16, 2020) (plaintiff's counsel could have raised the Appointments Clause argument before the agency because the key precedents on which *Lucia* relied were decided well before any administrative proceedings, and the decision in *Lucia* itself was issued before the Appeals Council ruled).

Requiring exhaustion at the administrative level prevents a represented party from withholding an objection for strategic reasons. *Bonilla-Bukhari*, quoting other cases, further explains the benefit of requiring a timely administrative challenge under the Appointments Clause:

> *Ryder*'s rule that relief is due for "timely" challenges was created as an incentive "to raise Appointments Clause challenges with respect to questionable judicial appointments." *Ryder*, 515 U.S. at 182-83 . . . . Regularly permitting unsuccessful claimants to raise Appointments Clause challenges for the first time on judicial review, especially when the arguments underlying those challenges were available at the administrative level, would "encourage the practice of 'sandbagging': suggesting or permitting, for strategic reasons, that the [adjudicative entity] pursue a certain course, and later - if the outcome is unfavorable - claiming that the course followed was reversible error." *Freytag*, 501 U.S. at 895 . . . (Scalia, J., concurring in part and concurring in the judgment).

*Bonilla-Bukhari*, 357 F. Supp. 3d at 351-52 (quoting *Abbington v. Berryhill*, No. 1:17-CV-552, 2018 WL 6571208, at *7 (S.D. Ala. Dec. 13, 2018)).

Consistent with that approach, the SSA regulations anticipate that all disputed issues, including constitutional issues be raised at the administrative level. *See e.g.* 20 C.F.R. § 404.933(a)(2), (3) (a claimant should submit, in a written request to the ALJ,

"[t]he reasons you disagree with the previous determination or decision" and "[a] statement of additional evidence to be submitted"); § 404.924(d) (providing for an expedited appeals process when a claimant alleges that "the only factor preventing a favorable determination or decision is a provision in the law that you believe is unconstitutional."). While the issue in the instant case is not a provision "in the law," clearly, the SSA foresees that constitutional challenges may be made to the agency.[10]

Even if the individual ALJ was unable correct the constitutional defect on her own, other administrative relief may have been available to plaintiff if the issue had been timely raised. For example, the Commissioner could have appointed another ALJ to hear the matter, or the Appeals Council could have vacated the improperly appointed ALJ's decision. *See Gagliardi v. Soc. Sec. Admin.*, No. 18-CV-62106, 2020 WL 966595, at *4 (S.D. Fla. Feb. 28, 2020). Indeed, the Commissioner published a Social

---

[10] The Third Circuit panel in *Cirko* acknowledged that the Supreme Court in *Sims v. Apfel* did not address the question of whether issue exhaustion before an SSA ALJ, as opposed to an AAJ, should be required. *Cirko*, 948 F.3d at 115 (citing *Sims*, 530 U.S. at 107). The *Cirko* panel also recognized that the concurring opinion of Justice O'Connor in *Sims*, which joined only parts of the plurality opinion, controlled the precedential impact of that decision. *Cirko*, 948 F.3d at 155 n.4. Justice O'Connor concluded that a claimant should not be required to explicitly raise particular issues before the SSA Appeals Council, in order to be able to pursue those issues before a district court, primarily because the SSA regulations and procedures affirmatively suggested that specific issues need not be raised before the Appeals Council. 530 U.S. at 113. She did not join Part II-B of the plurality opinion, which focused on the non-adversarial nature of Social Security proceedings as a second reasons for not requiring issue exhaustion before the Appeals Council. As noted above, the SSA regulations, while not having an explicit exhaustion requirement, require the claimant to raise all disputed issues before the ALJ and to raise any objection to the assigned ALJ at the claimant's "earliest opportunity." So, I respectfully disagree with the *Cirko* panel that the *Sims* precedent supports not requiring issue exhaustion before the ALJ generally and before the ALJ or the Appeals Council with respect to the issue of the disqualification of the assigned ALJ.

16

Security Ruling ("SSR") to address the issue raised by the Supreme Court's decision in *Lucia*, effective March 15, 2019.  See SSR 19-1p, 84 Fed. Reg. 9582-02, 9583 (Mar. 15, 2019).  SSR 19-1 provides that, if a claimant has raised a "timely" challenge to the ALJ's appointment by presenting the claim to either the ALJ or to the Appeals Council, the agency would provide for additional administrative review of the claim as required by *Lucia*.  *Id.*

Notwithstanding the reasoning of the Third Circuit panel in *Cirko*, this court finds that the Commissioner and the public have a very strong interest in having Appointments Clause issues raised by counsel during the administrative process.  As explained in SSR-19, the SSA "receive[s] millions of applications for benefits each year," and the SSA "must make decisions efficiently in order to ensure that the system continues to work and serve the American people."  The SSA "employ[s] more ALJs than all other Federal agencies combined," issues "hundreds of thousands of decisions each year," and the impact of *Lucia* "has the potential to significantly affect" the SSA's hearings and appeals process.  *Id.*  Even the Third Circuit, in downplaying the impact of its *Cirko* decision, recognized that allowing plaintiffs to raise an Appointments Clause argument for the first time in federal court had the potential to impact hundreds of cases now pending in the district courts.  *See Cirko*, 948 F.3d at 159.

Moreover, while the Supreme Court has long recognized the interest in administrative litigants in the proper appointment of inferior officers under the

17

Appointments Clause, the relief sought by plaintiff in this case serves little or no purpose other than securing the tactical advantage of having a second "bite at the apple" after an unfavorable administrative decision.  Plaintiff is seeking to have a second hearing before a different ALJ, who, like ALJ Hoffman (who presided at plaintiff's initial hearing) and all of the other SSA ALJs, was not properly appointed at the time of his hearing, but is now, based on the Acting Commissioner's post hoc ratification of the appointment of all of the agency's ALJs and AAJs.  The petitioner in *Lucia* objected to having his rehearing, on remand, before another SEC ALJ whose prior, invalid appointment, had been remedied by subsequent ratification by the SEC.  *Lucia*, 138 S. Ct. at 2055 n.6.  While not ruling on the objection, the majority implicitly recognized the limitations of such a remedy, noting:  "The Commission has not suggested that it intends to assign Lucia's case on remand to an ALJ whose claim to authority rests on the ratification order."  In this case, given the invalid appointment of all of the SSA's ALJs and AAJs, there is no alternative to a new hearing before an ALJ whose appointment was affected by the same issues as ALJ Hoffman.  Thus, this court respectfully disagrees with the *Cirko* panel in how it weighed the respective interests of the Social Security Administration and the plaintiff in deciding whether to require issue exhaustion in the particular context of disability appeals before that agency.

Based on the analysis above, this court concludes that this is not one of the "rare cases" described by *Freytag* where a court should excuse plaintiff's failure to raise an

Appointments Clause claim during the administrative process.  Accordingly, plaintiff is not entitled to remand based upon an alleged violation of the Appointments Clause. This court will now consider whether the ALJ's determination was supported by substantial evidence.

## VII.  <u>RFC/WEIGHING EVIDENCE</u>

### A.    **Legal Standards**

#### 1.    **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§

404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)

(citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v.

Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019);

*Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions

plaintiff is capable of performing, and may not simply make conclusory statements

regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y.

2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d

582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200

F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp.

2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative

discussion, describing how the evidence supports the ALJ's conclusions, citing specific

medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266

(TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996

WL 374184, at *7).

### 2.    Weighing Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and

carefully considers medical source opinions about any issue.  SSR 96-5p, 1996 WL

374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues

are not "medical issues," but are "administrative findings."  The responsibility for

determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL

374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" of the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). This is known as the "treating physician rule."  If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider four factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). Should an ALJ assign less than controlling weight to a treating physician's

21

opinion and fail to consider the above-mentioned factors, this is a procedural error. *Estrella*, 925 F.3d at 96.  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id*.

## B. Application

As noted above, the ALJ found that plaintiff could perform the full range of light work.  (T. 23).  Plaintiff argues that the ALJ did not properly weigh the medical evidence regarding plaintiff's physical impairments, particularly the evidence regarding plaintiff's difficulty using her hands.  (Pl.'s Br. at 19-20).  This court disagrees, and concludes that the ALJ's RFC assessment of plaintiff's physical impairments was supported by substantial evidence.

For example, the ALJ considered the multiple medical opinions provided by plaintiff's treating gastroenterologist, Dr. Sara Mitchell.  (T. 29-30).  The ALJ assigned "some weight" to Dr. Mitchell's March 29, 2016 opinion that plaintiff would "continue to need restriction for bending and heavy lifting due to [a] chronic medical condition." (T. 29, 1383).  However, she assigned "no weight" to Dr. Mitchell's subsequent, more restrictive opinions dated June 21, 2016, November 19, 2016, and January 23, 2018 due to a lack of support in the record evidence.  (T. 29-30, 559-62, 1384).

The ALJ identified several reasons for discounting these treating source opinions. First, the restrictions were based on "diagnoses outside of Dr. Mitchell's area of

expertise, including manipulative limitations not closely tied to [plaintiff's] digestive

disorders," and a need for a three-day work week due to plaintiff's reported back pain.

(T. 29-30, 1384).  These restrictions were also inconsistent with Dr. Mitchell's own

notes, related to plaintiff's digestive impairments, that described "mild" or

"intermittent" symptoms following treatment.  (T. 31, 500, 542, 551, 559).  The ALJ

also noted that the manipulative and postural limitations described by Dr. Mitchell were

not supported by the examination notes from other medical sources who were more

involved in the treatment of plaintiff's back and joint pain, and were inconsistent with

the consultative examiner's reports.  (T. 551-52, 563, 614, 617).

The ALJ provided similar reasons for assigning "no weight" to the opinions of

two other treating sources–Dr. David J. Murphy, Jr., and Physician's Assistant ("PA")

Robert C. Richman.  (T. 30, 565-66, 1385).  On September 25, 2017, Dr. Murphy,

plaintiff's orthopedic surgeon, opined that plaintiff could only lift, push, and pull

between five to ten pounds bilaterally due to numbness and pain in her hands.  (T. 566).

On December 7, 2017, PA Richman opined that plaintiff could push, pull or lift no more

than five pounds, and could not perform any repetitive hand motions.  (T. 1385).  He

also opined that plaintiff could not bend or stoop.  (*Id*.)  The ALJ discounted these

opinions because they were inconsistent with the results of physical examinations that

plaintiff's carpal tunnel syndrome was mild, and that her abilities had improved

following surgery.  (T. 30, 565).  The ALJ also cited treatment notes that characterized

plaintiff's x-ray and MRI results for her shoulder, wrists, and spine as "unremarkable" or within normal limits.  (T. 31-32, 447, 457, 630-31, 1154).

The ALJ assigned "some," but less than great weight to the treating source opinions of Dr. Raymond Alcuri and PA Carla Vavala.  (T. 29, 557-58, 1154).  On June 20, 2016, PA Vavala opined that plaintiff's mild back pain would not cause her to be off-task for extended periods of time, and would not otherwise interfere with her ability to work an ordinary work day.  (T. 557).  In September 1, 2016 treatment notes, Dr. Alcuri described plaintiff's lumber spine MRI results as normal.  His recommended course of treatment for plaintiff's back pain was home exercise, participation in behavioral health classes, and quitting smoking.  (T. 1154).

Dr. Kalyani Ganesh, who performed consultative examinations of plaintiff on May 30, 2014 and April 22, 2016, reached similar conclusions as Dr. Alcuri and PA Vavala.  (T. 550-53, 1379-82).  During the May 2014 examination, plaintiff demonstrated full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally in the cervical and lumbar spine, as well as full range of motion in the shoulders, elbows, forearms, and wrists bilaterally.  (T. 1381).  She had intact hand and finger dexterity, full strength in the upper and lower extremities, and full grip strength. (*Id*.)  Based on this examination, Dr. Ganesh opined that plaintiff had "mild to minimal" limitations in lifting, carrying, pushing, or pulling, but no limitations with regard to sitting, standing, and walking. (*Id.*)  Plaintiff's April 22, 2016 consultative

examination report is quite similar, although plaintiff showed reduced extension and flexion in the lumbar spine. (T. 552).  Dr. Ganesh did not identify any lifting or other physical restrictions in her 2016 consultative examination report. (T. 553).  In assessing a claimant's RFC, an ALJ is entitled to rely on opinions from medical consultants because they are qualified experts in the field of social security disability.  20 C.F.R. § 404.1527(e); *see, e.g., Cobb v. Comm'r of Soc. Sec.*, No. 5:13-CV-0591 (LEK/TWD), 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014) ("[T]he report of a consultative examiner may constitute substantial evidence to support an ALJ's decision." (*quoting Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)); *Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (rejecting plaintiff's argument that the ALJ's RFC determination was not supported by substantial evidence because the ALJ relied on the opinions of the consultative examiner and the medical expert, which contradicted the opinions of treating sources, but were otherwise supported by the record).

It is within the purview of the ALJ to review all the evidence before him, resolve evidentiary conflicts, and make a determination consistent with the evidence as a whole, which the ALJ did here.  *See, e.g., Bliss v. Colvin*, 13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such.") (*citing, inter alia, Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir.2012). Although the ALJ described the consultative reports as generally supportive of

25

plaintiff's ability to perform light work, her RFC actually included greater restrictions with regard to lifting and carrying.  This decision to discount specific portions of the consultative opinion was within her discretion.  *See Walker v. Colvin*, No. 3:15-CV-465 (CFH), 2016 WL 4768806, at *10 (N.D.N.Y. Sept. 13, 2016) ("[A]n ALJ may properly 'credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported.'  This is true even where the ALJ relies on a consultative examiner's examination findings, but rejects the consultative examiner's medical source statement . . . .").

## VIII.    <u>Evaluation of Symptoms</u>

### A.    **Legal Standards**

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account.  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  The ALJ must "'carefully consider'" all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[11] The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[12]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superceded SSR 96-7p).  The ALJ must assess the claimant's

---

[11] The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167.  The court will remain consistent with the terms as used by the Commissioner.

[12] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superceded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki v. Astrue*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d at 1040).

**B.    Application**

Plaintiff argues that the ALJ failed to properly consider her subjective complaints because her assessment was based upon "an insufficiently-developed analysis of activities of daily living" that failed to account for changes in plaintiff's condition. However, the ALJ's decision demonstrates consideration of plaintiff's symptoms in

accordance with SSR 16-3p.  (T. 23-34).  The ALJ reviewed plaintiff's function report,

testimony, and statements made to her health care professionals regarding her symptoms

and activities, with attention given to both physical and mental limitations.[13]  (T. 31-32).

In particular, the ALJ reviewed the evidence related to plaintiff's hands, wrists, and

arms, and found no limitations on plaintiff's ability to reach, handle, finger, feel, and

use her upper extremities, beyond the lifting limitations associated with light work.  (T.

31).

A review of the evidence of record supports the ALJ's findings.  Plaintiff's

allegations that her pain significantly limited her ability to lift, reach, handle, and

imposed significant postural limitations are inconsistent with treatment notes indicating

that "there was no reason" why her pain would interfere with her ability to work.  (T.

1154).  The ALJ also considered plaintiff's statements regarding her daily activities,

which included climbing stairs, driving, caring for children and pets, shopping, cooking,

and cleaning on a regular basis.  (T. 30-31, 51-55, 213-216).  *See, e.g., Herrington v.*

*Berryhill*, No. 3:18-CV-315, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019)

(activities of daily living, including childcare, are an appropriate factor for an ALJ to

consider when assessing claimant's claimed symptoms and limitations) (collecting

cases); *Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (affirming an ALJ's

---

[13] Plaintiff alleged that she suffered from mental impairments including depression, attention-deficit disorder, and obsessive compulsive disorder, and the ALJ considered those allegations at step two and as part of her RFC analysis. (T. 20-21, 25).  Plaintiff has not directly challenged those portions of the ALJ's decision.

decision not to give controlling weight to the more restrictive opinion of a treating physician based on the opinion of a consultative examiner that plaintiff could perform sedentary work with additional limitations, and the evidence that plaintiff was capable of various activities of daily living, including childcare).

The ALJ also noted record evidence that plaintiff's hand pain improved following surgery, and that her treating sources opted for a conservative treatment that included intermittent physical therapy and use of a splint on her wrist.  (T. 31, 565-66, 619, 1246-47)  With regard to back pain, the ALJ cited evidence that regular cortisone injections allowed plaintiff to sit, stand, and walk for longer periods of time without pain. (T. 24, 1093).  The ALJ undertook a similar analysis with regard to the impact of plaintiff's digestive issues, and noted that plaintiff's complaints "improved with modification of her diet, vitamin supplements, and use of various combinations of oral medications." (T. 23).

During her hearing, plaintiff testified that she was frequently allowed to lean or support herself against a metal "slab" or counter for the duration of her shift due to pain, despite it being against the formal workplace rules. (T. 54-55).  In her decision, the ALJ commented on the lack of any disciplinary action arising from this continuous violation of workplace policy. (T. 26).  Plaintiff contends this showed the ALJ "searching for an inconsistency to use to bolster her decision." (Pl.'s Br. at 24).  This court disagrees, and concludes that the ALJ raised a legitimate inquiry into the frequency of plaintiff's need

to lean or support herself, in light of the recognized conflict with her employer's policy for a job that required plaintiff to be near the front counter, in view of customers. (T. 54).

Plaintiff also objects to the ALJ's conclusion that plaintiff's continued use of tobacco, despite repeated warnings from her physicians to quit, suggested that her digestive symptoms were not as severe as she alleged. (T. 24, 546, 551). Cases have found that there are numerous reasons why an individual may continue smoking or other addictive behavior despite the health risks, thus making it an "unreliable" basis to assess credibility. *See Goff v. Astrue*, 993 F. Supp. 2d 114, 128 (N.D.N.Y. 2012). However, the ALJ's reliance here was minimal, and harmless error in light of the numerous other factors that the ALJ considered in reference to plaintiff's digestive and other impairments. (T. 23-24, 27).

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino*, 312 F.3d at 588. However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ resolved conflicts between the objective medical record, medical opinion evidence, and plaintiff's testimony by assigning the greatest weight to that evidence that she deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that

31

was consistent with the overall record.  *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d

Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the

opinions of medical sources, ALJ was entitled to weigh all of the evidence available to

make an RFC finding that was consistent with the record as a whole).  In light of the

ALJ's analysis of plaintiff's medical history, the relevant medical opinions, and

plaintiff's activities of daily living, this court concludes that her RFC determination was

supported by substantial evidence, as summarized above.

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's

complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**


Dated: April 29, 2020

Andrew T. Baxter
U.S. Magistrate Judge